**42 U.S.C. § 1983 CIVIL ACTION COMPLAINT**
********************************************

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Corey A. Day, Plaintiff, ProSe.

CA 08 161

Vs.

Civil Action No.________________

Ashbel T. Wall, Director DOC,
Warden Weeden, Maximum Security Facility,
Deputy Warden Kettle, Maximum Security Facility,
Roberta Richman, Assistant Director Programs,
John Rogers, Supervisor R.I.D.O.C. Food Services, et al.

**JURY TRIAL DEMANDED** **JURY TRIAL DEMANDED** **JURY TRIAL DEMANDED**

## CIVIL RIGHTS COMPLAINT

This is a class action civil complaint filed pursuant to 42 USCA 1983, by the Plaintiff, Corey A. Day, Pro Se, an inmate at the Rhode Island Department of Corrections Maximum Security Facility, in Cranston, Rhode Island, alleging violations of his constitutional rights by the named Defendants. The Plaintiff is seeking a preliminary injunction, declaratory judgement, compensatory and punitive relief. **The Plaintiff seeks "Trial By JURY".**

## I. JURISDICTION AND VENUE

1. This is a civil action authorized by 42 U.S.C Section 1983 to redress deprivation, under color of law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff claims for injunctive relief as authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure. The Plaintiff also invokes the pendent jurisdiction of this court to decide and hear matter relating to state law, as well as to claims relating to policies and practices of the Rhode Island Department of Corrections.

2. The District of Rhode Island is an appropriate venue under 28 U.S.C. section 1391 (b)(2) because it is where the events giving rise to this claim occured.

## II. PREVIOUS LAWSUITS BY PLAINTIFF

3. Plaintiff has filed other lawsuits dealing with the same facts involved in this action or otherwise relating to his imprisonment.

4. There is an active class action civil complaint currently before the United States District Court for the District of Rhode Island (See: **Islamic Sunni Ummah v.**

**Ashbel T. Wall, Et al., Civil Action No. 08-094ML).** The Case is assigned to the Honorable District Court Judge Mary M. Lisi. The case was filed on approximately Feburay 22, 2008.

5. On April 21, 2008, Plaintiff Corey Day, filed a letter with the court requesting to be removed from the case. On April 22, 2008, Plaintiff Corey Day, filed a formal motion with the court requesting to be removed from the complaint immediately . As of the initiation of this complaint, no repsonse has been given on the aforesaid motion. **SEE: APPENDIX A. (MOTION TO REMOVE NAMED PLAINTIFF FROM CLASS ACTION COMPLAINT).**

## III. PLAINTIFF

6. Plaintiff, Corey A. Day, is and was at all times mentioned herein a prisoner of the State of Rhode Island in the custody of the Rhode Island Department of Corrections. He is currently confined in the Maximum Security Facility, in Cranston Rhode Island.

## IV. DEFENDANTS

7. Defendant, Ashbel T. Wall is the Director of the Rhode Island Department of Corrections. He is legally responsible for the overall operation of the Department and each institution under its jurisdiction, including the Maximum Security Facility.

8. Defendant, James Weeden, is the Warden of the Maximum Security Facility. He is legally responsible for the operation of the Maximum Security Facility and for the welfare of all the inmates of that prison.

9. Defendant, Matthew Kettle, is the Deputy Warden of the Maximum Security Facility, who, at all times mentioned herein in this complaint, held the rank of Deputy Warden, and was ass-igned to the Maximum Security Facility.

10. Defendant, Roberta Richman is the Assistant Director of Programs for the Rhode Island Department of Corrections. She has at all times mentioned in this complaint held the rank of Assistant Director of Programs and was assinged to the overall oversight of each institution under the jurisdiction of the Rhode Island Department of Corrections, and within the overall oversight of the capacities of her position.

11. Defendant, John Rogers, is the Supervisor of the Rhode Island Department of Correction's Food Services, who, at all times mentioned in this complaint, held the rank of Supervisor and was assigned to the overall oversight of the Food Services of all institutions within the jurisdiction of the Rhode Island Department of Corrections.

12. Each defendant is sued individually and in his/her official capacity. At all times mentioned in this complaint each defendant acted under the color of law.

13. Et alia, Defendants of the Rhode Island Department of Corrections, in Cranston, Rhode Island.

## V. FACTS

14. I, Corey A. Day, inmate of the Rhode Island Department of Corrections, Maximum Security Facility in Cranston, R.I. of Providence County, hereby makes the following affidavit under the penalty of perjury under both Federal and State laws. I swear as follows to the best of my knowledge:

15. I am a Muslim and am currently in the A.C.I.'s Maximum Security Facility. The A.C.I. has done an unimaginable amount of things against me and all Muslims, both in the Maximum Security Facility, and in the other facilities as well, to hinder us from the practice of our Islamic faith.

16. The A.C.I. has a policy that they will accomidate the dietary restrictions of Muslim inmates. Muslims cannot eat pork, and meats the were not slaughtered in accordance with Islamic Law. In response to this though, the A.C.I. chooses to give Muslims meals that consist of nothing more than two or three slices of cheese, four slices of bread, and a vegetable. Three slices of cheese is hardly an adequate and healthy alternative to the types of meals that the general population is fed. While the general population eats hamburgers, hot dogs, meat loaf, spicy and fried chicken, etc., the Muslims are left with nothing more than a few slices of cheese and bread. A few times a month , there may be a kitchen steward

who is sympathetic enough to give the Muslims a piece of fish or a cup of beans, but otherwise, the A.C.I. attempts to satisfy our nutritional and religous requirements with the cheese, claiming it to be a cost effective and healthy alternative.

17. The Muslims are consistently and systematically denied a basic alternative to the unlawful meat that we are required to abstain from. Likewise, Islamic Law greatly prohibits a Muslim from consuming foods that are unwholesome or detrimental to one's health, as is the current situation.

18. Our Holy Prophet Muhammad (Peace and Blessings Be Upon Him) has told us that, "the heart rejoices in eating meat" (related by Ibn Majah and Abu Huraira--May Allah Be Pleased With Them Both). Further, the Prophet Muhammad's closest disciple and relative, Ali bin Abi Talib(May Allah be Pleased With Him) said, "Meat comes from Meat: whoever does not eat meat for forty days in a row will waste away." The Prophet Muhammad instructed the Muslims to follow his disciples because they have the most knowledge and comprehension of the Islamic faith; and Ali bin Abi Talib in particular is one of a few of the Prophet Muhammad's disciples who were given guarantees of paradise by him. So for a Muslim, it is considered very destructive, not only to eat unlawful meat, but also to go without lawful meat. Meat contains irons, proteins, and amino acids that aren't available in other types of foods-especially not three slices of cheese.

19. Allah (God) tells Muslims in the Qur'an:

-- "So eat of meats on which Allah's name has been pronounced, if ye have faith in His signs. Why should ye not eat of meats on which Allah's name hath been pronounced, when He hath explained to you in detail what is forbidden to you-except under compulsion of necessity? But many do mislead (people) by their appetites unchecked by knowledge. Thy Lord knoweth best those who transgress." ("The Holy Qur'an", Surah 6-Al An'am, Verses 118-119: Translation by, Abdullah Yusuf Ali).

--"Of the cattle are some for burden and some for meat: Eat what Allah hath provided for you, and follow not the footsteps of Satan: For he is to you an avowed enemy." (Ibid,Verse 142).

--"Say(Prophet Muhammad): 'I find not in the Message recieved by me by inspiration any (meat) forbidden to be eaten by anyone who wishes to eat it, unless it be dead meat, or blood poured forth, or the flesh of swine-for it is an abomination-or what is impious, on which a name hath been invoked other than Allah's." (Ibid.,Verse 145).

20. For a Muslim, it is very much forbidden to take something that Allah has made lawful unto us, and then to go without it, especially when this causes detriment to a person's body and spirit-as in the current situation. What the A.C.I. is doing by serving us sub-standard food, is forcing us to choose between the pangs of hunger and the facts of under nourishment, or to compromise our faith and eat the unlawful food that the A.C.I. serves to the general population, all to the detriment of our faith.

21 .If a Muslim consumes any unlawful food, even if it were only a crumb, it is not only a great sin, but he will also not have any of his prayers anwsered for forty days. It is a firm belief of Muslims that on the Day of Judgement, the first thing Allah looks at when judging us is our prayers. If they are found to be defective, He won't even consider any of our other good deeds and we will subsequently be cast into the Fire of Hell. So a simple act of consuming unlawful food, even once, can bring a man great punishment. I, and my Muslim bretheren would rather die of mal-nutrition, and/or suffer the pangs of hunger and weakness, than to ever consume even a crumb of unlawful food.

22. Muslims are no different than any other people. We still require the same balanced diet of breads, meat, fish, poultry, fruits, vegetables, and fat, that the Federal Government recommends for daily allowances (c.f. the USDA "Food Pyramid"). Muslims are not vegetarians, nor does our faith command us to any such unlawful action as that.

23. Allah commands Muslims in the Qur'an:

--"So eat of the sustenance which Allah has provided for you lawful and good; and be greatful for the favours of Allah, if it is Him who ye serve."(Ibid., Surah 16-Al Nahl, Verese 114).

--"Eat and pasture your cattle: verily, in this are Signs, for men endued with understanding."(Ibid.,Surah 20-Ta Ha, Verse 54).

24 . The A.C.I.'s countinued use of three slices of cheese as a healthy substitute goes against everything that the Muslims regard as sacred in their religon and which they strive to uphold. We see the continued use of cheese as a mockery of our faith, and it goes against the clear mandates of the religon of Islam.

25 . Furthermore, even of the non-meat foods that the A.C.I. serves us, there is no way for the Muslims to know if the food contains pork or any other type of unlawful substances or by-products. When a Muslim is encountered with a doubtful situation such as this, he is commanded to abstain from the doubteful food. Thus, this further deprives him of what little food he is getting already.

26 . When the A.C.I. does serve the Muslims their cheese trays, they still often contain the meat that the general population is eating as well, thus it becomes containimated and we cannot eat it. For example, if the general population is eating bologna at lunch, the Muslims will be served their cheese and bread with the bologna right on top of it or beneath it, thus rendering our whole meal unlawful for us to consume. We are once again forced to either eat the unlawful food and deystroy our faith , or go hungry without so much as a piece of bread inside of us.

27 . There is also no way of knowing if the food we're being served was in anyway containimated in the kitchen as well.

If the food we're served was cooked in the same pot or placed on the same tray, or served with the same utensil that had already been used with unlawful food, then our meal becomes contaiminated and our meal in rendered unlawful. Kitchen porters in preparing food will always handle unlawful food and food products and then go and handle the Muslim meals while their hands are contaiminated, thus rendering the Muslim meals unlawful for us to eat.

28 . The Holy Prophet Muhammad(Peace and Blessings Be Upon Him), forbade eating the following foods together at the same meal: milk and fish, or vinegar and milk, or fruit and milk, or lettuce and fish, or garlic and onions, or dried meat and fresh meat, or sour things and acid things, or sumach and vinegar, or vinegar and rice, or grapes and excessive eating of aubergines, or pomegranates and meat pudding, or two cold dishes, or two hot dishes, or two wind producing dishes. (C.F. "As-Suyuti's Medicine of the Prophet," by Jalalu'd-Din Abd'ur-Rahman As-Suyuti. page 10).

29 . Almost every meal the A.C.I. serves the Muslims goes completely against one, or more of the restrictions that I've named thus far in this affidavit. This further places an unimaginable hardship on myself and Muslims that the words on this page couldn't even begin to describe. All we want in this regard is to please our Lord and not incur punishment on our-selves. We strive for the life after death, and the diet we practice is one of the major ways in which we render our bodies and our souls into the complete willing submission and service

to Allah that we strive for.

30. Another aspect of our Islamic faith that the A.C.I. continually seeks to obstruct is the performance of our daily prayers. It is required that a Muslim pray five times a day, and it is highly stressed that one pray even more than that. The five obligatory prayers are spread out through the day from the morning till the night. When a time for prayer comes in, Muslims must stop whatever they are doing, and regardless of where they are, they must perform their obligatory prayers. The only exception to this being if there is an extreme fear of danger or loss of life. Even then, the prayer must be made up as soon as possible after the danger subsides. In the A.C.I., however, there are many circumstances in which, if a Muslim were to pray, he would be disciplined, sprayed with mace, and then thrown into isolation as punishment.

31. Muslims are not allowed to pray in the cell block, the gymnasium, the activities building, and even in the yard, prayers have been broken up under the threat of punishment. Even though there is a Mosque in the activities bulilding where Muslims could congregate and perform their obligatory prayers, the A.C.I. refuses to allow the Muslims to pray in the Mosque unless a civilian clergyman is present. In the Islamic religon, however, there is no formal clergy, preist system, or other central Islamic theological authority or institution. It is not necessary for some special person to conduct our prayers, and a Muslim's prayer will very rarely exceed ten minutes.

32 . Instead of allowing the Muslims to pray in the Mosque, or to pray at all in other areas of the compound, the A.C.I. forces us to choose between our obligation of performing a 5-10 minute prayer, or getting beaten, maced, and punished in isolation. Many times, Muslims are forced to pray in secret, hidden in blind-spots where corrections staff can't see them, while a Muslim posts lookout to prevent any harm from coming to those who are praying.

33 . As I mentioned earlier in this affidavit, if a Muslim's prayers are found to be defective, on the Day of Judgement, Allah will not even consider any of our other good deeds, and we will likely suffer the punishment of the Fire of Hell. This is a very real thing for Muslims that we believe will undoubtedly occur. The performance of the daily prayers is obligatory upon all Muslims, and the failure to perform them is considered a major sin and an act of disbelief.

34 . To compound all these infringements on our faith, the A.C.I. correctional officers engage in an endless campaing to verbally insult and harass Muslims under their watch. Not a day goes by that I'm not called a "terrorist," or referred to as the "Taliban," or any other of dozens of debasing remarks, conotations, and snickers. When Muslims go to get their food in the cafeteria, officers will ask us derogatory questions like,"hey, I got some nice pork chops for you. How'd you like that, buddy?" Or,"come on, I know you wanna' eat these hot-dogs...mmmm...ya smell that? I know you wanna' have one. Come on," they say as they taunt Muslims over their faith.

There isn't a single Muslim, myself included, who hasn't been degraded with comments like these. When the correctional officers see us in groups, many times they'll say to us that they're "going to break us up and shut us down." Whenever they can, without the administration knowing about it, officers will not allow Muslims to sit together at the same tables in the library or the cafeteria. When we tell the administration of theses things, the officers claim to have no knowledge of whay we're talking about, and our grievances go no furhter than that.

35. The Department of Corrections does not allow Muslim inmates to wear their Kufis outside of the cell or outside of the Mosque. A Kufi is similar to a "skull-cap", however it has a very deep spiritual purpose and place in the Islamic religon. It is meant to be worn at all times and not just in our cells or the mosque, for a few moments, and then thrust into the back pocket as one comes out. A Muslim needs this more outside his cell then inside.

36. When a Muslim wears a Kufi, it acts as a spiritual yoke on his mind, strengthening him in his faith and helping him to abstain from sin. It reminds him of his spiritual identity and helps to enforce the Islamic ideals inside of him. It is the practice of the Holy Prophet Muhammad (Peace Be Upon Him) to wear a head covering and it is obligaroty for all Muslims to follow the ways and mannerisms of the Holy Prophet Muhammad.

37 . All other religous groups, including Christians, Jews, Hindus, and others, are allowed to wear silver chains, rosary beads, medallions, and other types of religous articles. Unlike the Muslim religon, these articles are not obligatory. In Islam, it is quite the opposite.

38 . My attempts to resolve all the enclosed matters via the Prison Grievance system, have been compltely blocked by prison officials. Both the Deputy Warden and the Prison Grievance Coordinator have denied me the necessary grievane forms despite my repeated requests. The Department of Correction's grievance policy **(13.10)**, which I presented to them in person, says that grievance forms cannot be denied under any circumstances. Despite this, they will still not provide me with a single one.

39 . On, April 16, 2008, I wrote a letter to the Director of the Deparment of Corrections, Ashbel T. Wall, addressing the civil rights abuses that are outlined in this complaint. As of the initiation of this complaint, I have still not recieved any response form the Director. **(SEE: APPENDIX B-Code of Ethics and Conduct violations against the Sunni Muslim Population).**

40 . I, Corey A. Day, hereby swear to the above affidavit under the penalty of perjury under both Federal and State laws to the best of my knowledge under 28 USCA 1746.

Date: 4-28-2008

[signature]
Signed Under the Penalty of Perjury
[28 USCA 1746]

41. The Plaintiff refers to **Appendix H,** an internal memo of the Department of Corrections which clearly shows that Defendants Ashbel T. Wall, Roberta Richman, and John Rogers, all had clear and undeniable knowledge that they were required, per Federal Court ruling, to provide Muslim inmates with **"a diet sufficient to sustain the prisoner in good health...".**

42.. Furthermore, a menu was attached to this memo **(SEE: Appendix I),** which has never been adhered to to this day, nor has it ever been evaluated or formal changes made to it, as the memo (paragrapgh 3) indicated. Likewise, the memo indicates that **"any item containing meat is to be kept off the tray...",** however, this practice has rarely ever taken place, as has been outlined in the facts of this complaint.

43 . The Plaintiff refers to nine (9) singned affidavits, executed by other Muslim prisoners in the Maximum Security Facility of the Rhode Island Department of Corrections, in support of the facts outlined in this complaint. **SEE; Appendix G.**

## VI. LEGAL CLAIMS

. The Plaintiff realleges and incorporates by reference paragraphs 1 - 43 .

CONSTITUTIONAL VIOLATIONS

44. The First Amendment clearly states: "Congress shall make no law respecting an establishment of religon, or prohibiting the free excercise thereof; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

45. The Defendant' have violated all the Plaintiffs first amendment rights when establishing unwritten policies that have prohibited the free excercise of religon, freedom to worship (prayer in congregation in the yard, gym, etc.) and practice religon. Defendants are in the routine habit of reprisal tactics against Muslims, for no other reason than the fact, Defendants' clearly violate the first amendment and the code of ethics of R.I.D.O.C. 3.14-1, that states employees must protect civil and legal rights of the offender population. This also states that personal feelings of staff, due to prejudice, connot interfere with an inmates practice of his religon,etc.. Defendants' clearly violate the first amendment and the code of ethics. **SEE: APPENDIX C**

46. Plaintiff petitions the Honorable Court for redress of grievances. Defendants' refuse to give Plaintiff any grievance forms, and utilize threats of punishment of punitive segregation if Plaintiff files or seek to file any grievance. This is a first, eighth and fourteenth amendment violation.

47. The Fourteenth Amendment cleary states: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the priviledges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

48. The Defendants' have violated all the Plaintiffs 14th amendment rights when establishing unwritten policies that have prohibited the free excercise of religon, freedom to worship (pray in congregation in the yard, gym, etc.) and practice religon. Defendants' are in the routine habit of reprisal tactics against Muslims, for no other reason than the fact, Defendants' clearly violate the 14th amendment and the code of ethics of R.I.D.O.C. 3.14-1, that states that employess must protect the civil and legal rights of the offender population. This policy also states that the personal feelings of staff, due to prejudice, cannot effect the free excercise of an Inmates religous practice, etc.. Defendants' clearly violate the 14th amendment and the code of ethics.

49. Plaintiff petitions the Honorable Court for redress of grievances. Defendants' refuse to give Plaintiff any grievance forms, and utilize threats of punishment of punitive segregation if Plaintiff files or seek to file any grievance. This is a first, eighth and fourteenth amendment violation.

50 . The Eighth Amendment clearly states:" Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

51 Cruel and unusual punishment to the defendants' comes in the form of reprisal tactics due to the fact that the plaintiffs' a practicing Sunni Muslims and wish to only comply with the Holy Qur'an, Fiqh-us-Sunnah, and Shari'ah, which are set guidelines of the Islamic faith. The unjust treatment of the defendants' denying plaintiff nutritious meals in compliance with the religous dietary requirements for no other reason than the defendants' being biased, racist,and prejudicial, against the Muslim population for no other reason that they wish to practice their Islamic faith. This creates an Eighth and Fourteenth Amendment violation.

52 . The Defentdants' routine habit of practice of repirsal tactics of threats of punitive segregation, unjustifiable taking of good time, and unjustifiable restrictions on the Plaintiffs' free excercise of religon, freedom to congregate and study and learn the Islamic faith (reading Qur'an, studying Arabic, etc.), and to openly express the faith without fear of harm from the above mentioned reprisal tactics including being beaten, maced, and having Islamic materal seized from the propery and deystroyed, this all creates a first, eight, and fourteenth amendment violation of plaintiiffs' rights all because he seeks to practice the Islamic faith.

53 . The Plaintiff therefore avers constitutional violations, and Federal Mandates set by the Honorable United States of America Federal Court have been violated by the Defendant's named within the complaint.

CLAIMS

FIRST CAUSE OF ACTION

54 . The actions of Ashbell T. Wall, Director DOC, Warden Weeden, Maximum Security Facility, Deputy Warden Kettle, Maximum Security Facility, Roberta Richman, Assistant Director Programs, John Rogers, Supervisor R.I.D.O.C. Food Services, et.al., as stated within the paragraphs throughout this complaint are in violation of the first and fourteenth amendment of the United States Constitution and the Constitution of the State of Rhode Island.

55 . The actions of the Defendants' as stated within this complaint violated the eight amendment right of protection against cruel and unusual punishment when the defendants are in the consistent routine habit of practice, individually and collectively, to cause health and nutritious deprivation, to the Plaintiff , as well as the use of reprisal tactics, threats of punitive segregation, unjustifiable taking of good time, and unjustifiable restrictions on the Plaintiffs' free excercise of the religon, freeedom to congregate and study and learn the Islamic faith (reading Qur'an, studying Arabic, etc.), and to openly express the faith without rear of harm from the above mentioned reprisal tactics including being beaten,

maced, and having Islamic material seized from property and deystroyed, this all creates a first, eighth, and fourteenth amendment violation of plaintiffs' rights all because he seeks to practice the Islamic faith.

56 . The actions of the Defendants' as stated within this complaint violated the 14th amendment right of equal protection of the constitutions and federal and state laws, polices etc. Defendants' are in the routine habit of practice, individually and collectively to violate the Plaintiffs' constitutional rights to practice, worship, free exercise, freedom of expressing of the Islamic Faith. In clear violation of the Constitution and both federal and state laws.

## SECOND CAUSE OF ACTION

57 . The actions of the Defendants' as stated within this complaint violated state and federal law and established policy at the Rhode Island Department of Corrections.

58 . The actions of Defendants' as stated within this complaint did in fact violate the code of ethics 3.14-1 policy of Rhode Island Department of Corrections, and the United States Constitutions First, Eighth and Fourteenth Amendments.

## THIRD CAUSE OF ACTION

59 . The actions of Defendants' as stated within this complaint did individually and collectively conspire to violate the civil and legal rights of the Plaintiff , the Defen-

dants clearly violated 18 USCA § 241 - Conspiracy Against Rights, and, § 242 - Deprivation of Rights Under Color of Law.

## Fourth Cause of Action

60. The Defendants are in clear violation of their own policies and the **CONSENT DECREE,** the Defendants consented to in: **Jefferson Vs. Moran, C.A. No. 85-5003, entered 12/12/85,** amending state statutory law...R.I.G.L 42-53-3 of the Administrative Procedures Act (APA); by the unlawful promulgation of policies mentioned that went before the Providence Superior Court Judge Susan McGuirl and Judge Gilbert V. Indeglia, also well aware was the Honorable Judge Rodgers; and the **CODE OF ETHICS 3.14-1 R.I.D.O.C. Policy on State Employees,** and the **DOC RELIGOUS PROGRAMS AND SERVICES POLICY; Repeals 26.01-1, DOC 5.06.02-1, 5.06.03-1. SEE: Appendix D-CONSENT DECREE.**

## Fifth Cause of Action

61. All of the Defendants' actions were clearly motivated by a deliberate indifference to the Plaintiff's rights, as the Federal and State Laws in this matter are clearly established, as well as the applicative Federal and State Court rulings, and the Department of Correction's own Policy. Ignorance can not be claimed in this matter as the Law and Policies are clearly known and established. This constitutes a reckless and callous indifference to the Plaintiff's rights.

62. Each of the named Defendants in their supervisory capacities, carried out or made a "policy" or "practice" that led to the violations of the Plaintiff's rights. Ergo, the supervisors must be held accountable for the actions of their subordinate staff who were only carrying out the will of their superiors, the named Defendants. The Plaintiff's rights were clearly established, and the Defendants cannot claim ignorance of their illegal conduct. The Defendants' clearly created their own policies, practices, and customs and allowed and encouraged the illegal acts. The Defendants' conduct was grossly neglegent. Likewise, the veracity of prison officials in their expected denial of the attempts by the Plaintiff to resolve these matters via the prison grievance system can be given little to no merit, as their conduct cleary exemplifies a conspiracy to violate rights under color of law, under **18 USCA Section 241 - Conspiracy Against Rights,** and **Section 242 - Deprivation of Rights Under Color of Law.**

## Sixth Cause of Action

63. The Plaintiff seeks a Preliminary Injunction against the named Defendants. The Plaintiff requests that the Court order the Defendants to allow the Plaintiff to pray openly in conformance with the Islamic Faith and the First Amendment right to the free excercise of religon. The Plaintiff further requests that the Court order the Defendants to allow the Plain-

tiff to wear his religous Kufi in accordance with his Islamic Faith and the Free Excercise of Religon, as guaranteed by the First Amendment of The Federal Constitution.

64. The Plaintiff seeks a Preliminary injunction against the Defendants, ordering them to provide meals that conform to the basic standards of nutrition and necessities of life, and in accordance with Islamic dietary laws. **SEE: Appendicies E and F.** And the Plaintiff further requests that he not be forced into a practice of forced vegetarianism, which is solely contrary to the mandates of his Islamic Faith. The Plaintiff seeks the Defendants to be ordered to have a licensed dietician review the planned menu for Plaintiff's meals, as is required by DOC Policy.

65. Defendants are in fact systematically depriving all Muslim inamtes of their First Amendment Constitutional right of Freedom of Religon, and Free Exercise of Religon. Since all policies, practices and administrative procedures are set by and are under the control of the Director of the Department of Corrections, and then carried out through the remainder of the named Defendants; and since he set no policies to safeguard inmates (Muslims) against unconstitutional conduct on the part of his subordinates, he must be held responsible, as well as those immediate supervisors, the named Defendants, who knew that such policies, practices and procedures were illegal, but still chose to carry them out, showing a deliberate indifference and

gross negligence to the Plaintiff's rights. **Ferola v. Moran, 622 F. Supp. 814 (D.R.I. 1985).**

66. The Plaintiff prays that the Honorable Court grant a preliminary and permanent injunction to prevent cruel and unusual punishment and further suffering of harm, that has led to irrepairable damage to the Plaintiff, and will continue in such damage as the Plaintiff awaits the disposition of this case. A **TEMPORARY RESTRAINING ORDER** is also prayed for only to prevent immediate and irreparable injury, and only until the Honorable Court has time to schedule a hearing to determine whether a preliminary injunction is justified.

Legal Argument and Legal Cites

**O'Lone v. Estate of Shebazz, 482 U.S. 342, 343; 107 S. Ct. 2400; 96 L. Ed. 2d 282 (1987).**

**Turner v. Safley, 482 U.S. 78, 81; 107 S. Ct. 2254; 96 L. Ed. 2d. 64 (1987).**

"Reasonableness Standard of Turner"

THE **TURNER** analysis considers the following factors:

1.) Whether there is a logical connection between the restrictions and the governmental interests invoked to justify it;

2.) the availability of alternative means to exercise the restricted right;

3.) the impact that accomidation of the right might have on other inmates, on prison personnel, and on allocation of prison resources generally; and

4.) whether there are "obvious, easy alternatives" to the policy that could be adopted at de minimis cost.

67. The Plaintiff is petitioning that the First Amendment Constitutional Rights be honored by the Defendant by providing Plaintiff with food that is sufficient to maintain good health and also satisfies the dietary laws mandated by the Islamic Faith. The Plaintiff is hereby proposing a cost effective resolve that does not compromise his religous faith, nor will create a significant administrative difficulty in doing so.

68. The Plaintiff is being deprived of basic nutritional requirements and recommended allowances when, in many cases, being fed only bread and cheese, in an attempt to force religous members (Muslims) to sacrifice their religous morals and values by conforming to an otherwise unlawful diet which the administration provides to the general population. If serving a vegetarian forced diet of cheese and bread is lawful to give to the Muslims, as well as cost effective, then why not just do the same for the general population of thousands of men as well?

69. The right to religous diet has been the source of much litigation over the years. The reason for this is that the number of religons require their members to follow a rigid dietary code, which the Rhode Island Department of Corrections AND powers to be within do not honor... In clear violation of the former Director who entered into a **CONSENT DECREE** with former Muslim plaintiffs in **RE: Jefferson v. Moran, C.A. No. 85-5003, entered 12/12/1985 amending State statutory Law R.I.G.L. 42-33-3 of the Administrative Procedures Act.** By the unlawful promulgation of policies mentioned in present complaint before the Honorable Court, where Plaintiff has been denied fair and consistent application of **R.I.G.L. 42-35-1 et seq.,** and

42-35-3 of the A.P.A..

70. In determining whether a party is entitled to a temporary restraining order or a preliminary injunction, Courts generally consider several factors: Whether the party will suffer irreparable injury, the "balance of hardships" between the parties, the likelihood of success on the merits, and the public interest. Each of these factors favors the grant of this motion.

A. <u>The Plaintiff is threatened with irreparable injury.</u>

The plaintiff alleges that he has been denied dietary meals in accordance with his Religous dietary laws via an improperly promulgated policy **#5.06.01, DOC,** promulgated by the Defendants. Such conduct by prison officials is a clear violation of **Article I, Section 2 of the Constitution of the State of Rhode Island, L'Heureux v. State Department of Corrections, 708 A.2d. 549 (R.I.1998)-("The parties in Morris I had no power to amend the statutory law of the State of Rhode Island. Nor could such a power be effectuated by a permanent injunction issued by the Federal District Court in Morris IV. Even the consent decree issued by the Superior Court in Jefferson v. Moran, on December 12, 1985, could not amend the A.P.A. to include a limitation on rule-making power concerning the internal grievanc of the A.C.I.."). See, also cases cited in <u>part "C" of this point, ahead.</u>**

71. As a matter of law the continuing deprivation of constitutional rights constitutes irreparable harm. **<u>Ehbod v. Burns</u>, 427 U.S. 347, 373; 96 S.Ct. 2673 (1976).** This principle has been applied in prison litigation generally, see **<u>Newsom</u>**

**<u>v. Norris,</u> 888 F.2d. 371, 378 (6th Circuit 1989); <u>Mitch v. Cuomo</u>, 748 F.2d. 804, 806 (2nd.Cir.1984), <u>Albro v. County of Onondoga,N.Y.</u>, 627 F.Supp.1280, 1287 (N.D.N.Y.1986), <u>Williams v. Lone,</u> 646 F. Supp. 1379, 1409 (N.D.ILL.1986), aff'd 851 F.2d. 867 (7th Cir. 1988), cert. denied, 109 S.Ct.879 (1989).** In some cases couts have been willing to grant an injunction against a prison policy affecting a number of prisoners without certifying a class. **SEE, <u>Mujahid v. Summer</u>, 807 F.Sipp.1505, 1513 (D.Haw.1992), aff'd 996 F.2d.1226 (9th Cir. 1993); <u>McCorgo v. Vaughn,</u> 778 F. Supp. 1341, 1342 (E.D.P.A. 1991).**

72. In addition, the plaintiff is threatened with irreparable harm because of the nature of his injury, denied dietary meals in accordance with religous beliefs via an improperly promulgated policy, **DOC Policy #26.01**, which violates his due process of law rights under State Statutory Law 42-56-10(22), 42-35-1 Et.seq., and Article I, Section 2 of the Constitution of the State of Rhode Island; as well as, most importantly, the First, Eight, and Fourteenth Amedments of the Constitution of the United States of America. And, subsequently forcing the Plaintiff to consume small portions of food that do not meet even the most basic of nutritional standards. This forces the Plaintiff to either eat the inadequate food that the Department serves him, or to eat the unlawful food that is fed to the general population, and thus compromise his religous beliefs. The practice of forcing the plaintiff to either choose between his religon, or a forced practice of

vegetarianism, which does not meet adequate nutrition standards, nor does it comply with the Plaintiff's Islamic faith, all this constitutes a continued and irreparable harm that must be remedied immediately.

B. The Balance of Hardships favors the Plaintiff.

In deciding whether to grant T.R.O.'s and preliminary injunctions, courts ask whether the suffering of the moving party, if the motion is denied, will outweigh the suffering of the non-moving party, if the motion is granted. **SEE, e.g., Ferola v. Moran, 622 F.Supp. 814 (D.RI 1985)-("Since all policies, practices and administrative procedures are set by and are under the control of the Director of Corrections, and since he set no policies to safeguard inmates against unconstitutional conduct of the part of his subordinates, he had to be held responsible.").**

73 . In this case, the present suffering of the plaintiff and the potential suffering he may face if he permanently looses the right to be provided with dietary meals in accordance with the Islamic religous dietary laws via the improperly promulgated policy **DOC Policy #26.01**, will continue to remain harmful and irreparable. And his First Amendment Right to the free exercise of religon and Due process of law are enormous. The "suffering" the defendants will expierience if the court grants the order will consist of providing the Plaintiff with religous dietary meals in accordance with his Islamic religous beliefs, including not forcing the Plaintiff into a forced practice of vegetarianism, which is completely contrary

to the laws of Islam; and providing the Plaintiff with Halal meat that is in accordance with his Islamic beliefs. Furthermore, the "suffering" that the Defendants would expierience if the court grants the order on the other matters related to this request for a preliminary injunction, will consist of simply allowing the Plaintiff to pray openly in accordance with his Islamic beliefs, and to wear his religous kufi in accordance with the dictates of his Islamic faith. And Defendants would be required to discontinue contradicting their own policies as well as the improperly promulgated polic **DOC #26.01.** The Defendants hardship amounts to nothing more than business as usual.

C. The Plaintiff is likely to succeed on the merits.

74. The Plaintiff has a great likelihood of success on the merits. What Defendants have done is intentionally denied the Plaintiff even the most basic right to pray to Almighty God, and to adhere to the dietary restrictions of his Islamic Faith. The Defendants have clearly done this via an improperly promulgated policy **DOC#26.01**, in violation of **R.I.G.L 42-56-10(22)** and **42-35-1 Et.seq.**, in which the Rhode Island Supreme Court concluded: **"The parties to Morris I had no power to amend the statutory law of the State of Rhode Island. Nor could such a power be effectuated by a permanent injunction issued by the Federal District Court in Morris IV. Even the Consent Decree issued by the Superior Court in Jeffreson v. Moran, on December 12, 1985, could not amend the A.P.A., to include a limitation in the Rule-making power concerning the inter nal governance of the A.C.I.. SEE; L'Heureux v.**

State Department of Corrections, 708 A2d. 549 (RI 1998).

75. The actions of the Defendants, undoubtedly as well, violate the First, Eighth, and Fourteenth Amendments of the Constitution of the United States of America.

D. The Relief Sought Will Serve the Public Interest.

76. In this case, the grant of relief will serve the public interest because it is always in the public interest for prison officials to obey the law. **Duran v. Anaya, 642 F.Supp. 510, 527 (D.N.M. 1986)-(Respect for law, particularly by officials responsible for the administration of the state's correctional system, is in itself a matter of the highest public interest."). See also, Llewelyn v. Oakland County Prosecutor's Office, 402 F.Supp. 1379, 1393 (E.D.Mich. 1975)-("The Constitution is the ultimate expression of the public interest.").**

SEVENTH CAUSE OF ACTION

77. The Plaintiff should not be required to post security.

78. Usually the litigant who obtains interim injunctive relief is asked to post security. However, the Plaintiff is an indigent prisoner and is unable to post security. The court has discretion to excuse an impoverished litigant from posting security. **Orantes-Hernandez v. Smith, 541 F.Supp. 351, 385 n. 30 (C.D. Cal 1982), J.L. v. Parhan, 412 F.Supp.112, 140 (D.GA. 1976), Rev'd on other grounds, 442 U.S. 584, 99 S.Ct. 2493 (1979).** In view of the denial of allowing the Plaintiff to pray openly, wear his religous kufi, and providing him with dietary meals that accord with his religous beliefs, the court

should grant the relief requested without requiring the posting of security.

EIGTH CAUSE OF ACTION

79. The actions of the Defendants are in clear violation of the **Rhode Island Department of Corrections Religous Programs Poicy,** which read in part: **"All inmates have the right to the free exercise of their religous beliefs and the liberty of worship according to the dictates of their consciences."**

NINTH CAUSE OF ACTION

80. The actions of the Defendants are in clear violation of the **Rhode Island Department of Corrections Code of Ethics Policy (3.14-1)**,which reads in part: **"Staff shall protect the civil and legal rights of each member of the offender population."**

TENTH CAUSE OF ACTION

81. The actions of the Defendants are in clear violation of the **Rhode Island Department of Corrections Menu Planning Policy (16.05-1) [SEE Appendix J]**, which clearly states that it is the policy of the Department of Corrections **"to ensure menus: A. are planned in advance; B. are reviewed and approved by a licensed Dietician; C. are reviewd with the Administrator of Physical Resources or designee, relative to anticipated changes and associated timeframes; D. meet the National Academy of Science Food and Nutrition Board's Recommended Dietary Allowances; and E. utilize tested recipes.**

ELEVENTH CAUSE OF ACTION

82 . The actions of the Defendants are in clear violation of the **Rhode Island Department of Corrections Religous Programs and Services Policy,** which reads in part: **"The inmate menu is written to accomidate the diet restrictions of Jewish and Muslim inmates."**

TWELFTH CAUSE OF ACTION

83 . The Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irrepairably injured by the conduct of the Defendants unless this court grants the declaratory and injunctinve relief which plaintiff seeks.

**VII. PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this court enter judgement granting plaintiff :

84. A declaration that the acts and ommissions described herein violated Plaintiff's rights under the Constitution and the Laws of the United States. As well as the Rhode Island Constitution, Rhode Island State Law, Federal and State Court rulings, Orders and Consent Decrees, and the Rhode Island Department of Correction's Policies.

85. A preliminary and permanent injunction ordering the Defendants to :

1. Provide the Plaintiff with meals that meet adequate nutrition standards and are in accordance with the dietary laws of the Plaintiff's sincerely held religous beliefs. Including

serving the Halal meat that is required by the Plaintiff's religon, and not just an inadequate meat substitute that does not even meet basic nutritional standards.

2. Allow the Plaintiff to pray openly in accordance with his religous beliefs, in the yard, gym, activities building, cell block, recreation areas, and in the Plaintiff's cell. As well as allowing the Plaintiff to access the Maximum Security Mosque during recreation periods, when the time for the Plaintiff's prayers may come in during those recreation periods.

3. Allow the Plaintiff to wear his religous Kufi, as is obligatory in his religon. Just as other group are allowed to wear their religous decorum, and as other inmates are allowed to wear base-ball hats and knit hats, etc..

86. Compensatory damages in the form of returning back to the policy of serving Halal (Islamically Lawful) food to the Muslims and not just an inadequate meat substitute.

87. Punitive damages in the amount the Honorable Court finds just and proper against the Defendants jointly and severally.

88. **A JURY TRIAL ON ALL ISSUES TRIABLE BY JURY.**

89. A **TEMPORARY RESTRAINING ORDER** ordering the Defendants to provide the Plaintiff with food the meats adequate nutrition standard and conforms to the Plaintiff's religous beliefs. And to order the Defendants to allow the Plaintiff to pray openly in accordance with his religous beliefs. And to allow the Plaintiff to wear his Kufi in accordance with his religous

beliefs.

90. Plaintiff's costs in this suit.

91. Any additonal relief this court deems just and proper and equitable.

Respectfully Submitted,

Date: 4-28-08

Corey A. Day, Pro Se.
P.O. Box 8273
Cranston, RI 02920-0273

**VERIFICATION**

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them, to be true. I certify under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed at Cranston, R.I., on 4-28-08.