APPENDIX B

Corey A. Day, ID#127574
Maximum Security Facility
P.O.Box 8273
Cranston, RI 02920-0273

April 16, 2008

Ashbel T. Wall, Director
Rhode Island Department of Corrections
40 Howard Ave.
Cranston, RI 02920

RE: Code of Ethics and Conduct violations against the Sunni Muslim population.

Dear Director Wall:

This letter is an informal grievance to address certain civil rights abuses that are taking place in the Maximum Security Facility. Such abuses are being done at the hands of the Maximum Security Administrators, and the issues inevitably fall under your respective jurisdiction and oversight.

The Muslim inmates of the Maximum Security Facility have been denied the right to pray in the prison yard as the result of a direct order from Warden Weeden and Deputy Warden Kettle. This amounts to a clear violation of First and Fourteenth Amendment rights under the Federal Constitution. Likewise, denying the Muslim inmates the right to pray in the prison yard is in clear violation of the Rhode Island Department of Correction's Religous Programs policy, which reads in part: "**All inmates**

have the right to the free excercise of their religous beliefs and the liberty of worship according to the dictates of their consciences." Furthermore, DOC Policy 3.14-1, Code of Ethics, reads: "Staff shall protects the civil and legal rights of each member of the offender population."

Whenever two or more Muslims are in one place together, it is obligatory for them to establish congregational prayer. It is not simply something that is optional as it may be in other religons. The failure to perform the prayer in congregation is a major act of transgression in the religon of Islam. Muslims are required to pray five (5) times a day in the morning, noon, afternoon, evening, and night. Given this, it is only during the 2:30p.m. and 7:30p.m. recreation periods, that Muslims in the yard, would need to pray a brief five minute prayer.

It is understood that any large group of inmates gathered in one place, may pose a security risk. However, if by chance, there was more than a handful of Muslims in the yard, there would be no harm in us splitting up into groups of three to five, or whatever the Department may feel comfortable with. We have even proposed to the administration that we be allowed to pray right in front of the guard-shack in the yard, just in case security would somehow still be an issue.

Other groups of inmates are allowed to congregate together and excercise, play cards, and even use aluminum baseball bats and other objects of similar import, without being labeled

as security risks. So it is difficult to concieve how three or four Muslims performing a five minute prayer, right in front of the guard-shack, could in any way constitute a greater security risk than twenty of more inmates running around with aluminum baseball bats.

We agree and respect the Department's need and concerns for security, however, this must be balanced against the rights of the inmate population "to the free excercise of their religous beliefs and the liberty of worship according to the dictates of their consciences"(RIDOC Religous Programs Policy 26.01-2).

No one would disagree that the Muslim community here in Maximum Security has never caused a breach of security or ever engaged in any type of behavior that has threatened the safetey of staff or the inmate population. We have had an excellent relationship with the administration over the years, and would hope to continue the same in the years ahead. The DOC has always been kind and considerate in resolving various issues with us in the past, and it can only be hoped that the same spirit of cooperation will prevail as we seek a fair resolution of the current matter.

We thank you for your help in this matter and look foward to hearing from you soon.

Respectfully Yours,

Corey A. Day
ID#127574
Maximum Security

**Certification of Service**
28 USC 1746

I, Corey A. Day, hereby certify that on, 4/17/08, I sent a true copy of the enclosed letter to Ashbel T. Wall, at 40 Howard Ave., Cranston, RI 02920. CC File: Imam Abdul Hameed, Roberta Richman, Warden Weeden, Warden Kettle, Michael B. Grant.

To: Ashbel T. Wall, Director
Rhode Island Department of Corrections
40 Howard Avenue
Cranston, R.I. 02920

From: Juan G. Evora (Abdul-Oadeer A.M. Evora)
Maximum Security Facility
P.O. Box 8273
Cranston, R.I. 02920

Date: April 16, 2008

**RE: Code of Ethics and Conduct violations against Sunni Muslims within Maximum Security Facility, and Constitutional Violations of The United States Constitution.**

Dear Director Wall:

This letter is written to address the unconstitutional Department of Corrections policy of Sunni Muslims of the Islamic Faith being denied the first amendment right to openly express, practice, worship Allah, and practice the Islamic Faith in incompliance with Qur'an and Fiqh-us-Sunnah.

On April 15, 2008 Warden Weeden in violation of the Rhode Island and United States Constitutions, "has stated all Muslims in Maximum Security Facility are not allowed to pray outside of their cells. A clear violation of Allah's decree within the Qur'an for Muslims to pray five times a day at the fixed times. Muslims are forced to give up liberty and remain in cells to worship Allah or not pray at the fixed time of pray, clearly a first amendment violation.

The First and Fourteenth Amendments are clearly violated by Warden Weeden and Deputy Kettle, and DOC Policies/Code of Ethics. April 15, 2008 Warden Weeden went as far as to state he wanted all Muslims to stand up when praying like all other religious groups in Maximum Security Facility. Muslims (Sunni Muslims) prostrate as did all the Prophets from Noah up to Muhammad (PBUH) had done. So it is clear here the code of ethics and constitutional violations of Warden Weeden, et al. are unjust.

The Code of Ethics and Conduct violations all started with the Correctional Officer of the Building #3 (Reading Library) writing false and misleading reports stating, "Muslims are taking over the reading library etc." In violation of 3.14-1 DOC Code of Ethics page 11 Of 13, g. <u>DISHONESTY</u> (2) Providing <u>false</u> or <u>misleading</u> <u>Statements</u> or <u>representations</u>, either <u>verbal</u> or <u>written</u>, <u>on any official forms</u>, <u>reports</u>, <u>logs</u>, <u>affidavits</u>, or other documents. The Staff are in violation of 3.14-1 DOC Code of Ethics page 11 Of 13, f. <u>Harassment</u> **(1)Language, written communication, or gestures which are intended to ridicule, taunt, embarass, insult, or provoke a fellow employee, staff member, <u>or member of the offender population</u>, for reasons including, but not limited to, race, ethnicity, national origin, <u>religon</u>, gender, age, handicap, or sexual orientation.** Violations or 3.14-1 DOC Code of Ethics, page 9 of 13, a. **<u>Conduct Unbecoming a Correctional Employee</u>** (3) **Abuse of position for personal gain or benefit.** Due to staff being racist against Muslims who have not violated DOC Rules or Policies,

caused the above abuses in violation of **18 USCA 241 and 242**, and the **Rhode Island** and **United States Constitutions**. The Sunni Muslims have not caused any security problems while praying, nor are they a gang. They read and write Arabic, study the Holy Qur'an, and pray practicing the Islamic Faith, which is their **First Amendment Right** protected by the **Fourteenth Amendment** of the **Rhode Island Constitution** and **United States Constitution**. Not all staff are against the practicing Sunni Muslims, yet you do have the bad mixed with the good.

Director Wall, **Rhode Island General Laws §42-56-10(v), Powers of the Director**; and **RIGL §36-14-1, Declaration of Policy**; and **RIGL §36-14-5, Code of Ethics for R.I. State Employess**, clearly gives you as the **Director** the powers to protect the civil and legal rights of the Sunni Muslims within the Rhode Island Department of Corrections. In full compliance with **3.14-1 DOC Code of Ethics, page 6 of 13, 4. Relationship with Offenders; a. Civil Rights of Offenders (1) Staff shall protect the civil and legal rights of each member of the Offender population., (2) The actions and judgements of staff in the exercise of duties which bring them into contact with the offender population shall not be influenced by personal feelings, attitudes, or prejudices toward an individual or group., (3) In dealing with or discussing the offender population, staff are forbidden to make derogatory remarks based on race, ethnicity, national origin, religon, gender, age, physical handicap, or sexual orientation., (4) Staff shall be firm, fair, and consistent in their conduct toward the offender population.**

Sir, it is transparent the above **Code of Ethics** violations are also **First and Fourteenth Amendment** violations of **Rhode Island and United States Constitutions**. Also violations of **26.01-2 DOC; Religous Programs and Services; Repeals 26.01-1. DOC 5.06.02-1, 5.06.03-1. Policy 26.01-2 DOC page 7 of 11, dated: 01/22/03, (5) Religous Activities.(see attached affidavit, prior use before Honorable Court), and attached pages of the Policy of Code of Ethics 3.14-1 DOC pages 1, 6, 9, and 11 of 13.**

Sir, you speak to the public and media about rehabilitation and programs. Here, the Islamic Faith has had a great rate of helping to rehabilitate all offenders of all different backgrounds **and ethnicities. Muslims** educate one another in all of the traditional studies, including English, Mathematics, History, and even Science. We even teach Arabic and almost every Muslim here can read and write in the Arabic language. Education is a command from Allah (God) upon all Muslims, and we dedicate ourselves to helping one another in this endeavor. Yet, these efforts of ours to rehabilitate ourselves is perpetually hampered by DOC staff. Where you say one thing to the public and the media, your staff go completely against rehabilitation.

What harm is there in praying to Allah (God)? What security

threat is praying to Allah (God)? Why should Muslims not be allowed to congregate together in the library or in the yard and study and educate themselves? What harm is there in Muslims adhering to the their Faith which commands a degree of personal responsibility and accountability upon each person to better themselves and be more than just some convict?

Please, Director Wall, we ask that you speak with Imam Abdul Hameed, Roberta Richman, Warden Weeden, and all other DOC staff, who have the ability to bring about a real change for the better, so that the Constitutional violations and Code of Ethics violations, etc., can be respectfully corrected.

Wherefore, I respectfully implore you that I be allowed to pray outside of my cell, not causing security violations, and to practice my Islamic Faith openly. I am American, born in the United States of America; the United States Constitution applies to incarcerated inmates also. So please help to correct the First and Fourteenth Amendment violations, not only within Maximum Security, but also the whole Department of Corrections.

Respectfull Submitted,

Juan Evora

Juan G. Evora
Maximum Security Facility

**Certification of Service**
28 USC 1746

I, Juan G. Evora, hereby certify that on, 4/17/08,

I sent a true copy of the enclosed letter to Ashbel T. Wall, at 40 Howard Ave., Cranston, RI 02920. CC File: Imam Abdul Hameed, Roberta Richman, Warden Weeden, Warden Kettle, Michael B. Grant.

Juan Evora